# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA CRAMER et al., | ) |
|     Plaintiffs, | ) |
| v. | ) Case No. CIV-18-179-G |
| OKLAHOMA COUNTY BOARD OF COUNTY COMMISSIONERS et al., | ) |
|     Defendants. | ) |

## OPINION AND ORDER

Now before the Court is a Motion for Summary Judgment (Doc. No. 39) of Defendant David Hooten, seeking judgment on the 42 U.S.C. § 1983 claim asserted by Plaintiff Aimee Drake. Plaintiff Drake has filed a Response (Doc. No. 53), to which Defendant Hooten has replied (Doc. No. 62). Also before the Court is a Motion for Summary Judgment (Doc. No. 36) filed by Defendant Board of County Commissioners of Oklahoma County ("Board"), to which Plaintiff Drake and the other plaintiffs in this action[1] have jointly responded (Doc. No. 49) and Defendant Board has replied (Doc. No. 60).[2]

---

[1] Angela Cramer, Donella Epps, Donna Hanson, Michael Hughes, Phillip Malone, and Sherry Owens.

[2] Defendants have also sought summary judgment on the basis of judicial estoppel, arguing that Plaintiff failed to identify this lawsuit in her Chapter 13 bankruptcy petition. *See* Doc. Nos. 67, 68, 70). Plaintiff does not dispute this contention and does not allege that the omission was inadvertent. Because Plaintiff's claim otherwise fails, however, the Court "declines to decide the close question of whether [Plaintiff] should be judicially estopped from bringing this suit." *Braxton v. Nortek Air Solutions, LLC*, No. CIV-17-277-R, 2018 WL 1630951, at *5 & n.6 (W.D. Okla. Apr. 4, 2018).

I.  Background

The Court previously summarized the factual landscape of this lawsuit:

> Each plaintiff was an at-will employee and [with the exception of Ms. Epps] had been hired by Carolyn Caudill, the former County Clerk for Oklahoma County, to work in the Oklahoma County Clerk's Office ("Clerk's Office").  Caudill was first elected in 1996; in March 2016, she announced she would seek a sixth term as County Clerk.  The plaintiffs were volunteer workers for, and supporters of, Caudill's re-election campaign . . . .
>
> [Defendant David Hooten] defeated Caudill in August 2016 in a runoff primary election and became the Republican Party candidate for County Clerk.  In November 2016, he defeated Chris Powell in the general election and was sworn in as County Clerk on January 3, 2017.

First Order of May 30, 2018 (Doc. No. 21) at 4-5 (footnote omitted).  The plaintiffs in this action were terminated by Defendant Hooten in January and February 2017.  *Id.* at 5; Am. Compl. (Doc. No. 15) ¶ 21; Answer (Doc. No. 24) ¶ 10.

Plaintiff Drake and the other plaintiffs in this action claim that they were improperly terminated from their jobs as retaliation for the exercise of their right to freedom of speech under the First Amendment.  Specifically, Plaintiff Drake alleges that shortly after Defendant Hooten took office, Hooten terminated Drake because she had supported Caudill and had volunteered for Caudill's campaign.

II.  Summary Judgment Standard

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact

2

could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting prior version of Fed. R. Civ. P. 56(e)); *see also* LCvR 56.1(c). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be

3

insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. Discussion

*A. Public Employee First Amendment Retaliation Claims*

As elements of a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, there is no question that Defendant Hooten acted under color of state law in terminating Clerk's Office employees. *See id.* at 49 ("[G]enerally, a public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law."). Defendant Hooten challenges whether Plaintiff can show that, in doing so, Hooten "'subject[ed]' Plaintiff, 'or cause[d] [Plaintiff] to be subjected,' 'to a deprivation of [her] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through

4

its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee, free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that should be referred to as "the *Garcetti/Pickering* analysis" (internal quotation marks omitted)). The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

B. *Relevant Facts*[3]

Plaintiff Drake was employed as a Deputy Clerk in the Clerk's Office from June 2014 until January 20, 2017. Am. Compl. ¶ 2; Answer ¶ 1. Plaintiff's relationship with

---

[3] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

5

her supervisor was "rocky." Plaintiff felt targeted by her supervisor, and Plaintiff discussed or complained about her supervisor to other Clerk's Office employees, but she believed that after 2015 "they had gotten back into a good spot." Drake Dep. 49:21-23, 53:18-19, 53:25-55:13, 111:19-112:24 (Doc. Nos. 39-1, 53-22);[4] Porter Dep. 35:19-37:3 (Doc. Nos. 39-2, 53-2); Pl.'s Resp. at 5.

To kick off her reelection campaign, Caudill held a party to which all of the Clerk's Office employees were invited. Cramer Dep. 45:5-20 (Doc. No. 39-4). Plaintiff Drake did not attend this party, although she did attend two other campaign events. Drake Dep. 63:14-64:1, 67:13-22, 69:3-11. Plaintiff also handed out flyers at her church and discussed her support for Caudill socially. *Id.* at 64:2-12, 69:12-17, 69:19-70:20.

Plaintiff Drake did not know who Defendant Hooten was at the time she participated in the campaign and does not remember talking to him at any events. *Id.* at 68:11-19, 73:19-20. Plaintiff did not discuss her campaign activities with Defendant Hooten. *Id.* at 119:18-22. Plaintiff believes that the only way Defendant Hooten would have known about Plaintiff's campaign involvement was through "general conversations" at the Clerk's Office or from her supervisor telling Defendant Hooten. *Id.* at 120:1-121:6, 121:11-25. Plaintiff bases her belief that her supervisor might have told Defendant Hooten of Plaintiff's campaign activities on the amount of time her supervisor spent with Defendant Hooten after he took office. *Id.* at 116:5-6, 119:9-11, 120:1-24.

---

[4] In citing to depositions, the Court uses the page numbers as they appear on the original transcripts. For all other documents filed by the parties, the Court uses ECF page numbers.

On January 20, 2017, Plaintiff Drake was told that the Clerk's Office was having "budget cuts" and that Plaintiff could either be terminated or resign. Drake Dep. 89:6-11, 90:4-93:10. Plaintiff chose to resign. *Id.* at 93:4-7. Defendant Hooten publicly stated that budget concerns were the reason for terminating Plaintiff and certain other employees in January and February 2017. Am. Compl. ¶ 22; Answer ¶ 11.

### C. *Defendant Hooten's Motion*

For purposes of his Motion, Defendant Hooten does not dispute Plaintiff Drake's ability to prove the first three *Garcetti/Pickering* elements in her favor. *See* Def. Hooten's Mot. at 17; *see also* First Order of May 30, 2018, at 8-10. Defendant Hooten does argue, however, that Plaintiff cannot show a genuine material fact issue as to the fourth and fifth elements and that he is therefore entitled to judgment as a matter of law. *See* Def. Hooten's Mot. at 18-25.

As to the fourth element—whether the protected speech was a motivating factor in the adverse employment action—a plaintiff must "establish a causal connection between his [or her] protected speech and an adverse employment action." *Underwood v. Bd. of Cty. Comm'rs of Cty. of Jefferson*, 611 F. Supp. 2d 1223, 1229 (W.D. Okla. 2009).

> To do so, the employee must show that his protected expression was a substantial or motivating factor in the adverse employment action. *Maestas*[*v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)]; *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005). Although the courts have not defined the phrase "substantial" or "motivating" factor for this purpose, the Tenth Circuit has explained the plaintiff's burden of showing a substantial motivating factor:
>
>> What constitutes a substantial motivating factor evades precise definition. An employee "need not prove his speech was the sole reason for defendants' action." *Copp v. Unified Sch. Dist. No. 501*,

7

> 882 F.2d 1547, 1554 (10th Cir. 1989). Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment.
>
> *Maestas*, 416 F.3d at 1188.

*Underwood*, 611 F. Supp. 2d at 1229.

Having carefully reviewed the record, the Court agrees that Plaintiff Drake has not met her burden to show a genuine fact issue for trial as to whether Plaintiff's termination was "substantially motivated by retaliation for" her support of Caudill's 2016 reelection campaign. *Id.* at 1232. Although Plaintiff was terminated only 17 days after Defendant Hooten took office on January 3, 2017, the Tenth Circuit has made clear that "temporal proximity is insufficient, without more, to establish [protected] speech as a substantial motivating factor in an adverse employment action." *Maestas*, 416 F.3d at 1189. Close temporal proximity coupled with an employer's knowledge of protected activity "may be sufficiently probative of causation to withstand summary judgment," however. *Id.*

Plaintiff Drake has not pointed to evidence sufficient to create a genuine issue of material fact that Defendant Hooten had "knowledge" of Plaintiff's speech in support of the Caudill campaign at the time of Plaintiff's termination. Plaintiff passed out flyers for Caudill and generally discussed her support for Caudill but she had no recollection of interacting with Defendant Hooten at any campaign events and did not discuss any campaign-related events with him. Plaintiff cites another employee's testimony that Defendant Hooten told that employee he knew who had donated money to Caudill's

8

campaign, but Plaintiff would not have been on that list because she did not donate any money to Caudill's campaign. *See* Pl.'s Resp. at 11 (citing Porter Dep. 21:17-22:10)). And while Plaintiff suggests her supervisor might have informed Defendant Hooten of Plaintiff's campaign activities, her evidence is speculative and refuted by the supervisor, who denied any knowledge of who worked on Caudill's campaign (besides herself). Hudson Dep. 62:4-7 (Doc. No. 39-6).[5]

In short, "[t]o withstand summary judgment . . . , an employee must produce evidence linking the employer's action to the employee's speech." *Maestas*, 416 F.3d at 1188. "Axiomatic to establishing causation in this context is proof that the employer knew of the employee's protected conduct." *Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 539 (10th Cir. 2010). "Speculation or hunches amidst rumor and innuendo will not suffice." *Maestas*, 416 F.3d at 1189. Because Plaintiff Drake's showing on the fourth element of her retaliation claim is overly speculative, she has not shown a genuine issue for trial, and Defendant Hooten in his individual capacity is entitled to judgment on this First Amendment claim.[6] *See id.* at 1189-90 (upholding grant of summary judgment to

---

[5] Defendant Hooten has presented evidence indicating that Plaintiff was fired for budgetary reasons and based upon the recommendation of her supervisor. *See*, *e.g.*, Hudson Dep. 36:8-12; Def. Hooten's Mot. Ex. 19 (Doc. No. 39-19); Lambert Dep. 11:3-12:6, 13:17-16:10, 19:4-15 (Doc. No. 39-8). Defendant Hooten also has presented evidence that "at least as many" employees who had participated in Caudill's campaign "were retained as were discharged" during the relevant time period. *Six v. Henry*, 42 F.3d 582, 584-85 (10th Cir. 1994); *see* Def. Hooten's Mot. Undisputed Facts at pp. 13-14, ¶¶ 46-54; Pl.'s Resp. to Def. Hooten's Facts at pp. 10-11, ¶¶ 46-54.

[6] Defendant Hooten also is entitled to dismissal of Plaintiff's claim against him in his official capacity. *See* First Order of May 30, 2018, at 1 n.2; Second Order of May 30, 2018

9

employers where plaintiffs failed to present sufficient evidence linking their speech to an adverse employment action).

*D. The Board's Motion*

Defendant Board primarily argues that it is entitled to summary judgment on Plaintiff Drake's claim because Plaintiff "lack[s] standing" to bring suit against this Defendant. Specifically, the Board argues that it does not exercise supervisory authority over Defendant Hooten as County Clerk, that Plaintiff is not complaining about any policies of the Board, and that Plaintiff cannot establish that her injuries "are fairly traceable to conduct of [the Board]," and thus the Board is not a "proper party" to this lawsuit. Def. Board's Mot. at 12-17, 19-20; Def. Board's Reply at 1-3.

The Board's standing argument conflates the justiciability of a plaintiff's lawsuit with the plaintiff's ultimate ability to prove a defendant's liability in that lawsuit. *Cf. Kauble v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-17-729-D, 2018 WL 912285, at *3 (W.D. Okla. Feb. 15, 2018) ("While couched in terms of subject matter jurisdiction, [the Oklahoma County Board of County Commissioners'] argument [that the plaintiff lacks Article III standing to sue], in reality, is premised on the notion that [the plaintiff] has failed to state a claim upon which relief can be granted because [the Oklahoma County Board of County Commissioners] has no authority to act in areas of detaining or releasing inmates."); *Thurman v. Cty. Comm'rs of Okla. Cty.*, No. CIV-17-950-M, 2018 WL

---

(Doc. No. 22) at 7 n.7; *Dixon v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-15-196-R, 2015 WL 5839364, at *2 (W.D. Okla. Oct. 7, 2015).

10

6237908, at *3 (W.D. Okla. Oct. 16, 2018) (R. & R.) (same), *adopted*, 2018 WL 6220213 (W.D. Okla. Nov. 28, 2018).

> This type of standing argument has been repeatedly rejected by this Court:
>
> Under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, in general, it *exercises* the powers of the county. 19 Okla. Stat. § 3. A suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county. 19 Okla. Stat. § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county. *Porro*[, 624 F.3d at 1328]; *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999). . . . .
>
> The motion filed by the Board of County Commissioners confuses the issue by arguing that it (the Board) is not a "proper party," essentially because it didn't do anything wrong, or fail to do anything it had a duty to do. But, as noted above, the Board, as such, is not even a legal entity and obviously cannot be a "party" regardless of what it did or didn't do. Rather, the question is whether a basis for claim against the *county* is stated.

*Snow v. Bd. of Cty. Comm'rs of Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (citing *DuBois v. Bd. of Cty. Comm'rs of Mayes Cty.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014)). "Although it is true that in certain circumstances a board of county commissioners may be an improper party because its policies or customs cannot be shown to be responsible for an alleged constitutional violation, that does not mean that a board can *never* be a proper party as a matter of law." *Kauble*, 2018 WL 912285, at *4; *accord Chichakli v. Samuels*, No. CIV-15-687-D, 2016 WL 11447755, at *3 (W.D. Okla. Mar. 10, 2016) (R. & R.) ("Grady County can be held liable notwithstanding the fact that the Grady County Board of County Commissioners, itself, does not operate the jail or promulgate the policies attendant thereto."), *adopted*, 2016 WL 2743542 (W.D. Okla. May 11, 2016). "The United States Supreme Court has

11

made it clear that any official or entity whose actions represent official policy may be liable under § 1983." *Vernon v. Slabosky*, No. CIV-11-815-HE, 2016 WL 4775739, at *14 (W.D. Okla. Sept. 14, 2016) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

As previously explained in this case, Plaintiff Drake's suit against the Board is actually a suit against Oklahoma County. *See* Second Order of May 30, 2018, at 7, 12-14; *see also Wright v. Stanley*, No. CIV-11-1235-C, 2015 WL 3606390, at *3 (W.D. Okla. June 8, 2015), *rev'd on other grounds sub nom. Wright v. Collison*, 651 F. App'x 745 (10th Cir. 2016). In order to hold Oklahoma County—sued here through the Board—liable on Plaintiff's First Amendment claim, Plaintiff must show: "(1) the existence of a county policy or custom by which [Plaintiff] was denied a constitutional right, and (2) that the policy or custom was the moving force behind the constitutional deprivation[—]i.e. that there is a direct causal link between the policy or custom and the injury alleged." *Snow*, 2014 WL 7335319, at *2 (internal quotation marks omitted). It is undisputed that Defendant Hooten, in his capacity as a "county officer," has final decisionmaking authority in performing certain functions, including hiring and firing. Am. Compl. ¶ 38; Answer ¶ 1; Def. Board's Mot. at 19; *see* Okla. Stat. tit. 19, § 161(1). As such, his "edicts or acts may fairly be said to represent official policy" as implemented by an official with final decisionmaking authority for Oklahoma County. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see Snow*, 2014 WL 7335319, at *7. And a plaintiff may be able to demonstrate an official "policy or custom" for § 1983 purposes through reference to "a final decision" by a county policymaker. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *see also* Second Order of May 30, 2018, at 14.

As outlined above, however, Plaintiff Drake cannot show a genuine factual dispute as to whether she "was denied a constitutional right." *Snow*, 2014 WL 7335319, at *2. Defendant Board therefore cannot be held liable for any such denial. *See id.*; *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) ("[M]unicipalities are only liable for constitutional violations that they have directly caused."); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) ("[A] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."); *cf. Poore v. Glanz*, 724 F. App'x 635, 639 (10th Cir. 2018) (noting that an official-capacity claim can only be proven "if the official's own policies led to the deprivation of the plaintiff's constitutional rights"). The Board is therefore entitled to summary judgment on Plaintiff's claim.

## CONCLUSION

As outlined herein, Plaintiff Aimee Drake's official-capacity 42 U.S.C. § 1983 claim against Defendant David Hooten is dismissed without prejudice, and Defendants' Supplemental Motion (Doc. No. 67) is DENIED. Defendant Hooten's Motion for Summary Judgment (Doc. No. 39) and Defendant Board's Motion for Summary Judgment (Doc. No. 36) are otherwise GRANTED as to Plaintiff Drake. Judgment in favor of Defendants on Plaintiff Drake's claim shall be entered after resolution of the remaining claims in this lawsuit.

IT IS SO ORDERED this 1st day of May, 2019.

*[Signature: Charles B. Goodwin]*
CHARLES B. GOODWIN
United States District Judge