# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

ANGELA CRAMER et al.,           )
                                )
    Plaintiffs,               )
                                )
v.                              )   Case No. CIV-18-179-G
                                )
OKLAHOMA COUNTY BOARD           )
OF COUNTY COMMISSIONERS et al., )
                                )
    Defendants.               )

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment (Doc. No. 41) of Defendant David Hooten, seeking judgment on the 42 U.S.C. § 1983 claim asserted by Plaintiff Donella Epps. Plaintiff Epps has filed a Response (Doc. No. 54), to which Defendant Hooten has replied (Doc. No. 63). Also before the Court is a Motion for Summary Judgment (Doc. No. 36) filed by Defendant Board of County Commissioners of Oklahoma County ("Board"), to which Plaintiff Epps and the other plaintiffs in this action[1] have jointly responded (Doc. No. 49) and Defendant Board has replied (Doc. No. 60).

    I.    Background

The Court previously summarized the factual landscape of this lawsuit:

    Each plaintiff was an at-will employee and [with the exception of Ms. Epps] had been hired by Carolyn Caudill, the former County Clerk for Oklahoma County, to work in the Oklahoma County Clerk's Office ("Clerk's Office"). Caudill was first elected in 1996; in March 2016, she announced

---

[1] Angela Cramer, Aimee Drake, Donna Hanson, Michael Hughes, Phillip Malone, and Sherry Owens.

she would seek a sixth term as County Clerk. The plaintiffs were volunteer workers for, and supporters of, Caudill's re-election campaign . . . .

[Defendant David Hooten] defeated Caudill in August 2016 in a runoff primary election and became the Republican Party candidate for County Clerk. In November 2016, he defeated Chris Powell in the general election and was sworn in as County Clerk on January 3, 2017.

First Order of May 30, 2018 (Doc. No. 21) at 4-5 (footnote omitted). The plaintiffs in this action were terminated by Defendant Hooten in January and February 2017. *Id.* at 5; Am. Compl. (Doc. No. 15) ¶ 21; Answer (Doc. No. 24) ¶ 10.

Plaintiff Epps and the other plaintiffs in this action claim that they were improperly terminated from their jobs as retaliation for their exercise of their right to freedom of speech under the First Amendment. Specifically, Plaintiff Epps alleges that shortly after Defendant Hooten took office, Hooten terminated Epps because she had supported Caudill and had volunteered for Caudill's campaign.

II. Summary Judgment Standard

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

2

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting prior version of Fed. R. Civ. P. 56(e)); *see also* LCvR 56.1(c). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. Discussion

   *A. Public Employee First Amendment Retaliation Claims*

As elements of a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, there is no question that Defendant Hooten acted under color of state law in terminating Clerk's Office employees. *See id.* at 49 ("[G]enerally, a public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law."). Defendant Hooten challenges whether Plaintiff can show that, in doing so, Hooten "'subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of [her] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee, free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that should be referred to as "the *Garcetti/Pickering* analysis" (internal quotation marks omitted)). The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

## B. Relevant Facts[2]

Plaintiff Epps worked as a Deputy Clerk, UCC/ROD Imaging and Mailroom Supervisor, and Cashier at the Clerk's Office. Am. Compl. ¶ 3; Answer ¶ 1. Plaintiff was employed with the Clerk's Office from January 16, 1989, until her termination on January 23, 2017. Am. Compl. ¶ 3; Answer ¶ 1.

---

[2] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

Plaintiff assisted with Caudill's campaign by placing 20 to 25 campaign signs in yards, attending an event at a park in Edmond where several candidates made speeches, and donating money to the campaign. Am. Compl. ¶ 15; Answer ¶ 7; Epps Dep. 49:19-50:6, 50:24-53:11 (Doc. No. 41-1).[3]

Plaintiff Epps did not see Defendant Hooten at any campaign event or tell Defendant Hooten about her campaign activities. Epps Dep. 53:12-14, 67:12-24. Plaintiff met Defendant Hooten for the first time when he came to the Clerk's Office after he had won the election. *Id.* at 55:5-9. After Defendant Hooten had been reelected, but possibly before he was sworn in as the new County Clerk on January 3, 2017, Defendant Hooten asked Plaintiff when she was going to retire. Epps Dep. 66:15-20, 66:24-67:4. Plaintiff responded, "One of these days, I will," and did not give Defendant Hooten a specific date. *Id.* at 66:20-21, 67:9-11; *see also* Hooten Dep. 30:12-20 (Doc. No. 54-1).

At some point after he took office, Defendant Hooten told Leona Porter, another Clerk's Office employee who was terminated by Defendant Hooten, that he knew Porter had contributed money to Caudill's campaign because of "contribution lists." Porter Dep. 21:15-22:3 (Doc. No. 54-2).[4] As noted, Plaintiff Epps donated money to the Caudill

---

[3] In citing to depositions, the Court uses the page and line numbers as they appear on the original transcripts. For all other documents filed by the parties, the Court uses ECF page numbers.

[4] Plaintiff references the conversations with Porter and the contribution lists in her statement of "Additional Material Facts." *See* Pl.'s Resp. at 9-15. Defendant Hooten does not specifically dispute any of Plaintiff's Additional Material Facts or raise any hearsay or other objections to the evidence relied upon therein. *See* Def. Hooten's Reply at 1-9. *See generally* Fed. R. Civ. P. 56(c)(2).

campaign and presumably appeared on the referenced contribution lists. *Cf. Pepsi-Cola Bottling Co.*, 431 F.3d at 1247 (noting that summary judgment evidence is reviewed "in the light most favorable to the non-moving party").

On January 23, 2017, Defendant Hooten had a conversation with Plaintiff Epps in which he referred to Plaintiff Epps helping with and donating money to Caudill's campaign. Epps Dep. 57:1-18. Plaintiff reported to Porter that Defendant Hooten had asked Plaintiff questions about Caudill's work attendance and about Plaintiff's support for Caudill in the campaign. Porter Dep. 14:10-15:9. Plaintiff told Porter that Plaintiff believed she was going to be fired based upon this January 23, 2017 conversation with Defendant Hooten. Epps Dep. at 66:5-9. Citing her observations of Defendant Hooten during the January 23, 2017 conversation, Plaintiff believes that she was terminated on account of her participation in Caudill's campaign. Epps Dep. 100:13-101:20 ("When he left, his attitude was different than it was when he came into my office.").

On January 23, 2017, after the conversation between Plaintiff Epps and Defendant Hooten, Plaintiff was told that "[d]ue to budgetary constraints," she had to either resign or be terminated. *Id.* at 69:11-17. Plaintiff elected instead to retire. *Id.* Defendant Hooten publicly stated that budget concerns were the reason for terminating Plaintiff and certain other employees in January and February 2017. Am. Compl. ¶ 22; Answer ¶ 11.

C. *Defendant Hooten's Motion*

For purposes of his Motion, Defendant Hooten does not dispute Plaintiff's ability to prove the first three *Garcetti/Pickering* elements in her favor. *See* Def. Hooten's Mot. at 16; *see also* First Order of May 30, 2018, at 8-10. Defendant Hooten does argue, however,

campaign and presumably appeared on the referenced contribution lists. *Cf. Pepsi-Cola Bottling Co.*, 431 F.3d at 1247 (noting that summary judgment evidence is reviewed "in the light most favorable to the non-moving party").

On January 23, 2017, Defendant Hooten had a conversation with Plaintiff Epps in which he referred to Plaintiff Epps helping with and donating money to Caudill's campaign. Epps Dep. 57:1-18. Plaintiff reported to Porter that Defendant Hooten had asked Plaintiff questions about Caudill's work attendance and about Plaintiff's support for Caudill in the campaign. Porter Dep. 14:10-15:9. Plaintiff told Porter that Plaintiff believed she was going to be fired based upon this January 23, 2017 conversation with Defendant Hooten. Epps Dep. at 66:5-9. Citing her observations of Defendant Hooten during the January 23, 2017 conversation, Plaintiff believes that she was terminated on account of her participation in Caudill's campaign. Epps Dep. 100:13-101:20 ("When he left, his attitude was different than it was when he came into my office.").

On January 23, 2017, after the conversation between Plaintiff Epps and Defendant Hooten, Plaintiff was told that "[d]ue to budgetary constraints," she had to either resign or be terminated. *Id.* at 69:11-17. Plaintiff elected instead to retire. *Id.* Defendant Hooten publicly stated that budget concerns were the reason for terminating Plaintiff and certain other employees in January and February 2017. Am. Compl. ¶ 22; Answer ¶ 11.

C. *Defendant Hooten's Motion*

For purposes of his Motion, Defendant Hooten does not dispute Plaintiff's ability to prove the first three *Garcetti/Pickering* elements in her favor. *See* Def. Hooten's Mot. at 16; *see also* First Order of May 30, 2018, at 8-10. Defendant Hooten does argue, however,

that Plaintiff cannot show a genuine material fact issue as to the fourth and fifth elements and that he is therefore entitled to judgment as a matter of law. *See* Def. Hooten's Mot. at 16-23.

### 1. Whether the Protected Speech Was a Motivating Factor

As to the fourth element—whether the protected speech was a motivating factor in the adverse employment action—a plaintiff must "establish a causal connection between his [or her] protected speech and an adverse employment action." *Underwood v. Bd. of Cty. Comm'rs of Cty. of Jefferson*, 611 F. Supp. 2d 1223, 1229 (W.D. Okla. 2009).

> To do so, the employee must show that his protected expression was a substantial or motivating factor in the adverse employment action. *Maestas*[*v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)]; *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005). Although the courts have not defined the phrase "substantial" or "motivating" factor for this purpose, the Tenth Circuit has explained the plaintiff's burden of showing a substantial motivating factor:
>
>> What constitutes a substantial motivating factor evades precise definition. An employee "need not prove his speech was the sole reason for defendants' action." *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1554 (10th Cir. 1989). Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment.
>
> *Maestas*, 416 F.3d at 1188.

*Underwood*, 611 F. Supp. 2d at 1229.

Having carefully reviewed the record, the Court finds that Plaintiff Epps has met her burden to show a genuine fact issue for trial as to whether Plaintiff's termination was "substantially motivated by retaliation for" her support of Caudill's 2016 reelection

campaign. *Id.* at 1232. As cited above, Plaintiff has presented evidence from which a jury could reasonably find that Defendant Hooten was aware of her campaign support for Caudill and that he disapproved of that support. And Plaintiff was terminated only 20 days after Defendant Hooten took office on January 3, 2017. Close temporal proximity coupled with an employer's knowledge of protected activity "may be sufficiently probative of causation to withstand summary judgment." *Maestas*, 416 F.3d at 1189; *see also id.* ("Other evidence of causation may include evidence the employer expressed opposition to the employee's speech . . . .").

Plaintiff has presented sufficient evidence to plausibly "link[] the employer's action to the employee's speech." *Id.* at 1188. Plaintiff therefore has shown a genuine issue for trial on the fourth *Garcetti/Pickering* element.[5] *See id.* at 1188-90; *Knopf*, 884 F.3d at 945.

### 2. Whether the Employer Would Have Reached the Same Employment Decision in the Absence of the Protected Conduct

At this fifth step in the analysis, the burden shifts to Defendant Hooten to show that he would have fired Plaintiff Epps "even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). "Summary judgment is appropriate on [this] step when any reasonable jury would [find] that the plaintiff would have been terminated even absent any desire on [the defendants'] part to

---

[5] Defendant Hooten is entitled to dismissal of Plaintiff's claim against him in his official capacity, however, as that claim is redundant of Plaintiff's claim against Defendant Board. *See* First Order of May 30, 2018, at 1 n.2; Second Order of May 30, 2018 (Doc. No. 22) at 7 n.7; *Dixon v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-15-196-R, 2015 WL 5839364, at *2 (W.D. Okla. Oct. 7, 2015).

9

punish [her] in retaliation for [her] allegedly protected speech." *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) (alterations and internal quotation marks omitted).

Defendant Hooten argues that when he took office he faced a looming budget disaster, causing him to terminate Plaintiff Epps and others in order to reduce the number of Clerk's Office employees. But, while the existence of budget concerns is undisputed, that does not mean that the selection of Plaintiff Epps as a subject of the reduction in force would have occurred absent retaliatory animus. As part of the process for reducing the number of Clerk's Office employees, Defendant Hooten met with Clerk's Office officials regarding projected deficits and staffing levels, and he asked certain department heads to provide lists of essential employees. Enevoldsen Dep. 14:11-16 (Doc. No. 41-6); Wilkerson Dep. 16:19-17:13 (Doc. No. 41-7); Def. Hooten's Mot. Ex. 10 (Doc. No. 41-10). Plaintiff was at the *top* of the list of essential employees in the Imaging Department. Def. Hooten's Mot. Ex. 10. And there is no evidence in the record of any performance issues or recommendation of termination with regard to Plaintiff's employment.

Citing evidence of statements by Plaintiff Epps indicating an intent to retire, Defendant Hooten argues that this was a basis to include her in the reduction in force. But Plaintiff has testified that in her conversations with Defendant Hooten she only generally referred to her future retirement rather than saying, as Defendant Hooten asserts, "[M]y stuff's already out of here. I'm gone." *Compare* Epps Dep. 66:20-21, 67:9-11, *with* Hooten Dep. 30:12-20. Such "issues of credibility" and contradictory accounts cannot be decided in a motion for summary judgment." 611 F. Supp. 2d at 1232 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000)).

The Court finds that Defendant Hooten has not produced sufficient undisputed evidence to establish as a matter of law that he would have terminated Plaintiff even absent the alleged retaliatory motive. Because Defendant Hooten's reason for terminating Plaintiff is the subject of disputed facts, summary judgment cannot properly be granted on this issue. *See Underwood*, 611 F. Supp. 2d at 1232; *Knopf*, 884 F.3d at 945.

### D. The Board's Motion

Defendant Board primarily argues that it is entitled to summary judgment on Plaintiff Epps' claim because Plaintiff "lack[s] standing" to bring suit against this Defendant. Specifically, the Board argues that it does not exercise supervisory authority over Defendant Hooten as County Clerk, that Plaintiff is not complaining about any policies of the Board, and that Plaintiff cannot establish that her injuries "are fairly traceable to conduct of [the Board]," and thus the Board is not a "proper party" to this lawsuit. Def. Board's Mot. at 12-17, 19-20; Def. Board's Reply at 1-3.

The Board's standing argument conflates the justiciability of a plaintiff's lawsuit with the plaintiff's ultimate ability to prove a defendant's liability in that lawsuit. *Cf. Kauble v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-17-729-D, 2018 WL 912285, at *3 (W.D. Okla. Feb. 15, 2018) ("While couched in terms of subject matter jurisdiction, [the Oklahoma County Board of County Commissioners'] argument [that the plaintiff lacks Article III standing to sue], in reality, is premised on the notion that [the plaintiff] has failed to state a claim upon which relief can be granted because [the Oklahoma County Board of County Commissioners] has no authority to act in areas of detaining or releasing inmates."); *Thurman v. Cty. Comm'rs of Okla. Cty.*, No. CIV-17-950-M, 2018 WL

11

6237908, at *3 (W.D. Okla. Oct. 16, 2018) (R. & R.) (same), *adopted*, 2018 WL 6220213 (W.D. Okla. Nov. 28, 2018).

> This type of standing argument has been repeatedly rejected by this Court:
>
> Under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, in general, it *exercises* the powers of the county. 19 Okla. Stat. § 3. A suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county. 19 Okla. Stat. § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county. *Porro*[, 624 F.3d at 1328]; *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999). . . . .
>
> The motion filed by the Board of County Commissioners confuses the issue by arguing that it (the Board) is not a "proper party," essentially because it didn't do anything wrong, or fail to do anything it had a duty to do. But, as noted above, the Board, as such, is not even a legal entity and obviously cannot be a "party" regardless of what it did or didn't do. Rather, the question is whether a basis for claim against the *county* is stated.

*Snow v. Bd. of Cty. Comm'rs of Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (citing *DuBois v. Bd. of Cty. Comm'rs of Mayes Cty.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014)). "Although it is true that in certain circumstances a board of county commissioners may be an improper party because its policies or customs cannot be shown to be responsible for an alleged constitutional violation, that does not mean that a board can *never* be a proper party as a matter of law." *Kauble*, 2018 WL 912285, at *4; *accord Chichakli v. Samuels*, No. CIV-15-687-D, 2016 WL 11447755, at *3 (W.D. Okla. Mar. 10, 2016) (R. & R.) ("Grady County can be held liable notwithstanding the fact that the Grady County Board of County Commissioners, itself, does not operate the jail or promulgate the policies attendant thereto."), *adopted*, 2016 WL 2743542 (W.D. Okla. May 11, 2016). "The United States Supreme Court has

made it clear that any official or entity whose actions represent official policy may be liable under § 1983." *Vernon v. Slabosky*, No. CIV-11-815-HE, 2016 WL 4775739, at *14 (W.D. Okla. Sept. 14, 2016) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

As previously explained in this case, Plaintiff Epps' suit against the Board is actually a suit against Oklahoma County. *See* Second Order of May 30, 2018, at 7, 12-14; *see also Wright v. Stanley*, No. CIV-11-1235-C, 2015 WL 3606390, at *3 (W.D. Okla. June 8, 2015), *rev'd on other grounds sub nom. Wright v. Collison*, 651 F. App'x 745 (10th Cir. 2016). In order to hold Oklahoma County—sued here through the Board—liable on Plaintiff's First Amendment claim, Plaintiff must show: "(1) the existence of a county policy or custom by which [Plaintiff] was denied a constitutional right, and (2) that the policy or custom was the moving force behind the constitutional deprivation[—]i.e. that there is a direct causal link between the policy or custom and the injury alleged." *Snow*, 2014 WL 7335319, at *2 (internal quotation marks omitted). It is undisputed that Defendant Hooten, in his capacity as a "county officer," has final decisionmaking authority in performing certain functions, including hiring and firing. Am. Compl. ¶ 38; Answer ¶ 1; Def. Board's Mot. at 19; *see* Okla. Stat. tit. 19, § 161(1). As such, his "edicts or acts may fairly be said to represent official policy" as implemented by an official with final decisionmaking authority for Oklahoma County. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see Snow*, 2014 WL 7335319, at *7. And a plaintiff may be able to demonstrate an official "policy or custom" for § 1983 purposes through reference to "a final decision" by a county policymaker. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *see also* Second Order of May 30, 2018, at 14.

As outlined above, Plaintiff has shown a genuine factual dispute as to whether she "was denied a constitutional right." *Snow*, 2014 WL 7335319, at *2. Defendant Board therefore may be held liable for any such denial. *See id.*; *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) ("[M]unicipalities are . . . liable for constitutional violations that they have directly caused."); *cf. Poore v. Glanz*, 724 F. App'x 635, 639 (10th Cir. 2018) (noting that an official-capacity claim can be proven "if the official's own policies led to the deprivation of the plaintiff's constitutional rights"). The Board is therefore not entitled to summary judgment on Plaintiff's claim.

## CONCLUSION

As outlined herein, Plaintiff Donella Epps' official-capacity 42 U.S.C. § 1983 claim against Defendant David Hooten is dismissed without prejudice. Defendant Hooten's Motion for Summary Judgment (Doc. No. 41) and Defendant Board's Motion for Summary Judgment (Doc. No. 36) are otherwise DENIED as to Plaintiff Epps.

IT IS SO ORDERED this 1st day of May, 2019.

_____
CHARLES B. GOODWIN
United States District Judge