UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA CRAMER et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CIV-18-179-G |
| ) | |
| OKLAHOMA COUNTY BOARD ) | |
| OF COUNTY COMMISSIONERS et al., ) | |
| ) | |
| Defendants. ) | |

## **OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment (Doc. No. 35) of Defendant David Hooten, seeking judgment on the 42 U.S.C. § 1983 claim asserted by Plaintiff Michael Hughes, PhD. Plaintiff Hughes has filed a Response (Doc. No. 50), to which Defendant Hooten has replied (Doc. No. 58). Also before the Court is a Motion for Summary Judgment (Doc. No. 36) filed by Defendant Board of County Commissioners of Oklahoma County ("Board"), to which Plaintiff Hughes and the other plaintiffs in this action[1] have jointly responded (Doc. No. 49) and Defendant Board has replied (Doc. No. 60).

I. Background

The Court previously summarized the factual landscape of this lawsuit:

> Each plaintiff was an at-will employee and [with the exception of Ms. Epps] had been hired by Carolyn Caudill, the former County Clerk for Oklahoma County, to work in the Oklahoma County Clerk's Office ("Clerk's Office"). Caudill was first elected in 1996; in March 2016, she announced

---

[1] Angela Cramer, Aimee Drake, Donella Epps, Donna Hanson, Phillip Malone, and Sherry Owens.

> she would seek a sixth term as County Clerk. The plaintiffs were volunteer workers for, and supporters of, Caudill's re-election campaign . . . .
>
> [Defendant David Hooten] defeated Caudill in August 2016 in a runoff primary election and became the Republican Party candidate for County Clerk. In November 2016, he defeated Chris Powell in the general election and was sworn in as County Clerk on January 3, 2017.

First Order of May 30, 2018 (Doc. No. 21) at 4-5 (footnote omitted). The plaintiffs in this action were terminated by Defendant Hooten in January and February 2017. *Id.* at 5; Am. Compl. (Doc. No. 15) ¶ 21; Answer (Doc. No. 24) ¶ 10.

Plaintiff Hughes and the other plaintiffs in this action claim that they were improperly terminated from the jobs as retaliation for their exercise of their right to freedom of speech under the First Amendment. Specifically, Plaintiff Hughes alleges that shortly after Defendant Hooten took office, Hooten terminated Hughes because he had supported Caudill and had volunteered for Caudill's campaign.

II. Summary Judgment Standard

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting prior version of Fed. R. Civ. P. 56(e)); *see also* LCvR 56.1(c). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. Discussion

   *A. Public Employee First Amendment Retaliation Claims*

As elements of a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, there is no question that Defendant Hooten acted under color of state law in terminating Clerk's Office employees. *See id.* at 49 ("[G]enerally, a public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law."). Defendant Hooten challenges whether Plaintiff can show that, in doing so, Hooten "'subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of [his] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

4

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee, free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that should be referred to as "the *Garcetti/Pickering* analysis" (internal quotation marks omitted)). The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

B. *Relevant Facts*[2]

During the relevant time period, Plaintiff Hughes was a part-time employee of the Clerk's Office who worked in various capacities. He was employed with the Clerk's Office from October 2014 until his termination on February 20, 2017. Am. Compl. ¶ 5; Answer ¶ 2; Pl.'s Ex. 24 (Doc. No. 50-24).

---

[2] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

5

Plaintiff Hughes assisted Caudill's reelection campaign by putting up campaign signs, wearing a campaign t-shirt and purchasing t-shirts for others, donating an unspecified amount of money to the campaign, writing a publicly released endorsement letter, and participating in parades. Am. Compl. ¶ 15; Answer ¶ 7; Hughes Dep. 39:20-40:1, 43:19-23, 44:5-16; 51:7-9 (Doc. Nos. 35-1, 50-22).[3]

Plaintiff Hughes did not see Defendant Hooten at the parades Plaintiff attended. He met Defendant Hooten for the first time when Hooten came to the Clerk's Office after the election. Hughes Dep. 52:16-53:5. Although Plaintiff did not tell Defendant Hooten about his campaign activities or hear anyone tell Defendant Hooten about Plaintiff's campaign activities, Plaintiff believes these activities were "common knowledge" and that Defendant Hooten was aware of Plaintiff's involvement. *Id.* at 44:5-47:10. Plaintiff does not know if Defendant Hooten saw Plaintiff's name on any campaign contribution lists. *Id.* at 44:11-23.

On January 3 or 4, 2017, Defendant Hooten met with Plaintiff Hughes and another part-time employee and stated that he intended "to terminate all of the consultants." Hughes Dep. 47:15-49:6. Plaintiff informed Defendant Hooten that they were employees, rather than independent contractors, and Defendant Hooten was surprised. *Id.* at 48:11-12, 49:24-25. Defendant Hooten stated that he was going to terminate the Clerk's Office's relationships with two independent contractors and "he didn't have any use for" Plaintiff

---

[3] In citing to depositions, the Court uses the page and line numbers as they appear on the original transcripts. For all other documents filed by the parties, the Court uses ECF page numbers.

and the other part-time employee. *Id.* at 48:12-15. Defendant Hooten told Plaintiff he needed Plaintiff's office and that Plaintiff would "need to be out by the end of the day." *Id.* at 49:15-16. Defendant Hooten publicly stated that budget concerns were the reason for terminating Plaintiff and certain other employees in January and February 2017. Am. Compl. ¶ 22; Answer ¶ 11.

Shortly after this meeting, Defendant Hooten made Plaintiff Hughes an offer to continue his employment with the Clerk's Office at a reduced hourly pay rate. Pl.'s Resp. Ex. 24 (Doc. No. 50-24).[4] On February 6, 2017, Plaintiff accepted this offer. *Id.* On February 16, 2017, Defendant Hooten requested supplemental funds for the Clerk's Office from the Oklahoma County Budget Board. This request was denied, and on February 20, 2017, Defendant Hooten terminated Plaintiff from his position with the Clerk's Office. *Id.*; Pl.'s Resp. Ex. 23 (Doc. No. 50-23); Lambert Aff. (Doc. No. 35-10).

### C. Defendant Hooten's Motion

For purposes of his Motion, Defendant Hooten does not dispute Plaintiff's ability to prove the first three *Garcetti/Pickering* elements in his favor. *See* Def. Hooten's Mot. at 11; *see also* First Order of May 30, 2018, at 8-10. Defendant Hooten does argue, however, that Plaintiff cannot show a genuine material fact issue as to the fourth and fifth elements and that he is therefore entitled to judgment as a matter of law. *See* Def. Hooten's Mot. at 11-21.

---

[4] This and certain other facts are taken from a memorandum rather than sworn testimony, but Plaintiff himself supplied the document and has presented no evidentiary objections thereto.

As to the fourth element—whether the protected speech was a motivating factor in the adverse employment action—a plaintiff must "establish a causal connection between his [or her] protected speech and an adverse employment action." *Underwood v. Bd. of Cty. Comm'rs of Cty. of Jefferson*, 611 F. Supp. 2d 1223, 1229 (W.D. Okla. 2009).

> To do so, the employee must show that his protected expression was a substantial or motivating factor in the adverse employment action. *Maestas*[*v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)]; *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005). Although the courts have not defined the phrase "substantial" or "motivating" factor for this purpose, the Tenth Circuit has explained the plaintiff's burden of showing a substantial motivating factor:
>
> > What constitutes a substantial motivating factor evades precise definition. An employee "need not prove his speech was the sole reason for defendants' action." *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1554 (10th Cir. 1989). Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment.
>
> *Maestas*, 416 F.3d at 1188.

*Underwood*, 611 F. Supp. 2d at 1229.

Having carefully reviewed the record, the Court agrees that Plaintiff Hughes has not met his burden to show a genuine fact issue for trial as to whether Plaintiff's termination was "substantially motivated by retaliation for" his support of Caudill's 2016 reelection campaign. *Id.* at 1232. Although Plaintiff was terminated soon after Defendant Hooten took office on January 3, 2017, the Tenth Circuit has made clear that "temporal proximity is insufficient, without more, to establish [protected] speech as a substantial motivating factor in an adverse employment action." *Maestas*, 416 F.3d at 1189. Close temporal

8

proximity coupled with an employer's knowledge of protected activity "may be sufficiently probative of causation to withstand summary judgment," however. *Id.*

Plaintiff Hughes has not pointed to evidence sufficient to create a genuine issue of material fact that Defendant Hooten had "knowledge" of Plaintiff's speech in support of the Caudill campaign at the time of Plaintiff's termination. Plaintiff did not recall seeing Defendant Hooten at the parades Plaintiff attended and did not discuss his activities on behalf of the Caudill campaign with Defendant Hooten. Plaintiff testified that he authored a Caudill endorsement letter but the record does not include this letter or relate any details regarding its circulation and audience, such that a reasonable juror could conclude that Defendant Hooten was aware of it. Plaintiff cites another employee's testimony that Defendant Hooten told that employee he knew who had donated money to Caudill's campaign, but this conversation took place after after Plaintiff had been told by Defendant Hooten to clear out his office. *See* Pl.'s Resp. at 11 (citing Porter Dep. 21:17-22:10 (Doc. No. 50-2)).[5]

In short, "[t]o withstand summary judgment . . . , an employee must produce evidence linking the employer's action to the employee's speech." *Maestas*, 416 F.3d at

---

[5] Defendant Hooten has presented evidence indicating that Plaintiff was ultimately fired for budgetary reasons. *See, e.g.*, Lambert Aff. ¶¶ 3-4; Lambert Dep. 11:3-12:6, 13:17-16:10, 19:4-15 (Doc. Nos. 35-33, 50-9). Consistent with this explanation, Defendant Hooten re-hired Plaintiff in February 2017 at a much-reduced pay rate. Further, Defendant Hooten has presented evidence that "at least as many" employees who had participated in Caudill's campaign "were retained as were discharged" during the relevant time period. *Six v. Henry*, 42 F.3d 582, 584-85 (10th Cir. 1994); *see* Def. Hooten's Mot. Undisputed Facts at pp. 7-8; ¶ 20; Pl.'s Resp. to Def. Hooten's Facts at p. 8, ¶ 20. Plaintiff does not point to any evidence to show that the other employee or consultants he references as being the subject of the January 3 or 4, 2017 meeting were also Caudill supporters.

1188. "Axiomatic to establishing causation in this context is proof that the employer knew of the employee's protected conduct." *Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 539 (10th Cir. 2010). "Speculation or hunches amidst rumor and innuendo will not suffice." *Maestas*, 416 F.3d at 1189. Because Plaintiff Hughes' showing on the fourth element of his retaliation claim is overly speculative, he has not shown a genuine issue for trial, and Defendant Hooten is entitled to judgment on this First Amendment claim.[6] *See Maestas*, 416 F.3d at 1189-90 (upholding grant of summary judgment to employers where plaintiffs failed to present sufficient evidence linking their speech to an adverse employment action).

### D. The Board's Motion

Defendant Board primarily argues that it is entitled to summary judgment on Plaintiff Hughes' claim because Plaintiff "lack[s] standing" to bring suit against this Defendant. Specifically, the Board argues that it does not exercise supervisory authority over Defendant Hooten as County Clerk, that Plaintiff is not complaining about any policies of the Board, and that Plaintiff cannot establish that his injuries "are fairly traceable to conduct of [the Board]," and thus the Board is not a "proper party" to this lawsuit. Def. Board's Mot. at 12-17, 19-20; Def. Board's Reply at 1-3.

The Board's standing argument conflates the justiciability of a plaintiff's lawsuit with the plaintiff's ultimate ability to prove a defendant's liability in that lawsuit. *Cf.*

---

[6] Defendant Hooten also is entitled to dismissal of Plaintiff's claim against him in his official capacity. *See* First Order of May 30, 2018, at 1 n.2; Second Order of May 30, 2018 (Doc. No. 22) at 7 n.7; *Dixon v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-15-196-R, 2015 WL 5839364, at *2 (W.D. Okla. Oct. 7, 2015).

*Kauble v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-17-729-D, 2018 WL 912285, at *3 (W.D. Okla. Feb. 15, 2018) ("While couched in terms of subject matter jurisdiction, [the Oklahoma County Board of County Commissioners'] argument [that the plaintiff lacks Article III standing to sue], in reality, is premised on the notion that [the plaintiff] has failed to state a claim upon which relief can be granted because [the Oklahoma County Board of County Commissioners] has no authority to act in areas of detaining or releasing inmates."); *Thurman v. Cty. Comm'rs of Okla. Cty.*, No. CIV-17-950-M, 2018 WL 6237908, at *3 (W.D. Okla. Oct. 16, 2018) (R. & R.) (same), *adopted*, 2018 WL 6220213 (W.D. Okla. Nov. 28, 2018).

> This type of standing argument has been repeatedly rejected by this Court:
>
> Under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, in general, it *exercises* the powers of the county. 19 Okla. Stat. § 3. A suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county. 19 Okla. Stat. § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county. *Porro*[, 624 F.3d at 1328]; *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999). . . . .
>
> The motion filed by the Board of County Commissioners confuses the issue by arguing that it (the Board) is not a "proper party," essentially because it didn't do anything wrong, or fail to do anything it had a duty to do. But, as noted above, the Board, as such, is not even a legal entity and obviously cannot be a "party" regardless of what it did or didn't do. Rather, the question is whether a basis for claim against the *county* is stated.

*Snow v. Bd. of Cty. Comm'rs of Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (citing *DuBois v. Bd. of Cty. Comm'rs of Mayes Cty.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014)). "Although it is true that in certain circumstances a board of county commissioners may be an improper party because its

policies or customs cannot be shown to be responsible for an alleged constitutional violation, that does not mean that a board can *never* be a proper party as a matter of law." *Kauble*, 2018 WL 912285, at *4; *accord Chichakli v. Samuels*, No. CIV-15-687-D, 2016 WL 11447755, at *3 (W.D. Okla. Mar. 10, 2016) (R. & R.) ("Grady County can be held liable notwithstanding the fact that the Grady County Board of County Commissioners, itself, does not operate the jail or promulgate the policies attendant thereto."), *adopted*, 2016 WL 2743542 (W.D. Okla. May 11, 2016). "The United States Supreme Court has made it clear that any official or entity whose actions represent official policy may be liable under § 1983." *Vernon v. Slabosky*, No. CIV-11-815-HE, 2016 WL 4775739, at *14 (W.D. Okla. Sept. 14, 2016) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

As previously explained in this case, Plaintiff Hughes' suit against the Board is actually a suit against Oklahoma County. *See* Second Order of May 30, 2018, at 7, 12-14; *see also Wright v. Stanley*, No. CIV-11-1235-C, 2015 WL 3606390, at *3 (W.D. Okla. June 8, 2015), *rev'd on other grounds sub nom. Wright v. Collison*, 651 F. App'x 745 (10th Cir. 2016). In order to hold Oklahoma County—sued here through the Board—liable on Plaintiff's First Amendment claim, Plaintiff must show: "(1) the existence of a county policy or custom by which [Plaintiff] was denied a constitutional right, and (2) that the policy or custom was the moving force behind the constitutional deprivation[—]i.e. that there is a direct causal link between the policy or custom and the injury alleged." *Snow*, 2014 WL 7335319, at *2 (internal quotation marks omitted). It is undisputed that Defendant Hooten, in his capacity as a "county officer," has final decisionmaking authority in performing certain functions, including hiring and firing. Am. Compl. ¶ 38; Answer ¶

1; Def. Board's Mot. at 19; *see* Okla. Stat. tit. 19, § 161(1). As such, his "edicts or acts may fairly be said to represent official policy" as implemented by an official with final decisionmaking authority for Oklahoma County. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see Snow*, 2014 WL 7335319, at *7. And a plaintiff may be able to demonstrate an official "policy or custom" for § 1983 purposes through reference to "a final decision" by a county policymaker. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *see also* Second Order of May 30, 2018, at 14.

As outlined above, however, Plaintiff Hughes cannot show a genuine factual dispute as to whether he "was denied a constitutional right." *Snow*, 2014 WL 7335319, at *2. Defendant Board therefore cannot be held liable for any such denial. *See id.*; *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) ("[M]unicipalities are only liable for constitutional violations that they have directly caused."); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) ("[A] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."); *cf. Poore v. Glanz*, 724 F. App'x 635, 639 (10th Cir. 2018) (noting that an official-capacity claim can only be proven "if the official's own policies led to the deprivation of the plaintiff's constitutional rights"). The Board is therefore entitled to summary judgment on Plaintiff's claim.

## CONCLUSION

As outlined herein, Plaintiff Michael Hughes' official-capacity 42 U.S.C. § 1983 claim against Defendant David Hooten is dismissed without prejudice. Defendant Hooten's Motion for Summary Judgment (Doc. No. 35) and Defendant Board's Motion for Summary Judgment (Doc. No. 36) are otherwise GRANTED as to Plaintiff Hughes.

13

Judgment in favor of Defendants on Plaintiff Hughes' claim shall be entered after resolution of the remaining claims in this lawsuit.

IT IS SO ORDERED this 1st day of May, 2019.

_Charles B. Goodwin_
CHARLES B. GOODWIN
United States District Judge