UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANGELA CRAMER et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-179-G |
| | ) | |
| OKLAHOMA COUNTY BOARD OF COUNTY COMMISSIONERS et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment (Doc. No. 37) of Defendant David Hooten, seeking judgment on the 42 U.S.C. § 1983 claim asserted by Plaintiff Phillip Malone. Plaintiff Malone has filed a Response (Doc. No. 51), to which Defendant Hooten has replied (Doc. No. 59). Also before the Court is a Motion for Summary Judgment (Doc. No. 36) filed by Defendant Board of County Commissioners of Oklahoma County ("Board"), to which Plaintiff Malone and the other plaintiffs in this action[1] have jointly responded (Doc. No. 49) and Defendant Board has replied (Doc. No. 60).

I. Background

The Court previously summarized the factual landscape of this lawsuit:

> Each plaintiff was an at-will employee and [with the exception of Ms. Epps] had been hired by Carolyn Caudill, the former County Clerk for Oklahoma County, to work in the Oklahoma County Clerk's Office ("Clerk's Office"). Caudill was first elected in 1996; in March 2016, she announced

---

[1] Angela Cramer, Aimee Drake, Donella Epps, Donna Hanson, Michael Hughes, and Sherry Owens.

> she would seek a sixth term as County Clerk. The plaintiffs were volunteer workers for, and supporters of, Caudill's re-election campaign . . . .
>
> [Defendant David Hooten] defeated Caudill in August 2016 in a runoff primary election and became the Republican Party candidate for County Clerk. In November 2016, he defeated Chris Powell in the general election and was sworn in as County Clerk on January 3, 2017.

First Order of May 30, 2018 (Doc. No. 21) at 4-5 (footnote omitted). The plaintiffs in this action were terminated by Defendant Hooten in January and February 2017. *Id.* at 5; Am. Compl. (Doc. No. 15) ¶ 21; Answer (Doc. No. 24) ¶ 10.

Plaintiff Malone and the other plaintiffs in this action claim that they were improperly terminated from their jobs as retaliation for the exercise of their right to freedom of speech under the First Amendment. Specifically, Plaintiff Malone alleges that shortly after Defendant Hooten took office, Hooten terminated Malone because he had supported Caudill and had volunteered for Caudill's campaign.

II. Summary Judgment Standard

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quoting prior version of Fed. R. Civ. P. 56(e)); *see also* LCvR 56.1(c). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

III. Discussion

   *A. Public Employee First Amendment Retaliation Claims*

As elements of a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, there is no question that Defendant Hooten acted under color of state law in terminating Clerk's Office employees. *See id.* at 49 ("[G]enerally, a public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law."). Defendant Hooten challenges whether Plaintiff can show that, in doing so, Hooten "'subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of [his] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee, free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that should be referred to as "the *Garcetti*/*Pickering* analysis" (internal quotation marks omitted)). The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

### B. Relevant Facts[2]

Plaintiff worked at the Clerk's Office from March 2015 until his termination on January 20, 2017, serving as Deputy Clerk and Wellness Benefit Program & Project Manager. Am. Compl. ¶ 6; Answer ¶ 3.[3]

Plaintiff was heavily involved in Caudill's reelection campaign and acted as a "pseudo campaign manager." His activities included scheduling meetings, recruiting and managing volunteers, participating in strategy sessions, attending functions, and recording a "robo call." Am. Compl. ¶ 15; Answer ¶ 7; Malone Dep. 25:22-24, 27:3-5 (Doc. Nos. 37-1, 51-23). Plaintiff also made and appeared in a television commercial endorsing Caudill. Malone Dep. at 45:8-10. Plaintiff believes that Defendant Hooten would have known about Plaintiff's involvement in Caudill's campaign because Defendant Hooten attended a forum where Plaintiff was present, would have received a robo call with Plaintiff's voice recording, and would have seen Plaintiff's television commercial. *Id.* at 45:1-10.

Plaintiff has testified that after Defendant Hooten was elected, he "directly asked" Plaintiff "how he [had] supported Caudill's reelection campaign." *Id.* at 27:24-28:8. Plaintiff responded that "pretty much anything that [Caudill] had asked me to do I would take care of." *Id.* at 28:20-23. Plaintiff also testified that when Defendant Hooten came to

---

[2] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

[3] In citing to depositions, the Court uses the page and line numbers as they appear on the original transcripts. For all other documents filed by the parties, the Court uses ECF page numbers.

tour the Clerk's Office after being elected, Defendant Hooten "had an at length conversation with [Caudill] about her staff and anybody who helped her with the campaign." *Id.* at 45:15-21.[4]

On January 20, 2017, Plaintiff met with two Clerk's Office officials who told him that "due to budget shortfalls," Plaintiff could either resign or be terminated. Pl.'s Ex. 25 (Doc. No. 51-25). Plaintiff was also told, "[T]his has nothing to do with you." *Id.* Plaintiff chose to be terminated. *Id.*; Pl.'s Ex. 24 (Doc. No. 51-24). Defendant Hooten publicly stated that budget concerns were the reason for terminating Plaintiff and certain other employees in January and February 2017. Am. Compl. ¶ 22; Answer ¶ 11.

### *C. Defendant Hooten's Motion*

In his Motion, Defendant Hooten challenges Plaintiff's ability to show a genuine issue of material fact as to the first, fourth, and fifth *Garcetti/Pickering* elements. *See* Def. Hooten's Mot. at 14-21; *see also* First Order of May 30, 2018, at 8-10. The Court disagrees.

#### 1. Whether the Speech Was Made Pursuant to Official Duties

Defendant Hooten argues that Plaintiff's campaign efforts were not "protected speech" because "nearly if not all" of those efforts "were actually part of [Plaintiff's] duties" at the Clerk's Office. Def. Hooten's Mot. at 14. In support, Defendant Hooten notes the fact that Plaintiff received a significant raise in August 2016 and Plaintiff's

---

[4] Defendant Hooten alleges that he did not know of the involvement of any of the plaintiffs in support of the Caudill campaign until "after the lawsuit was filed." Def. Hooten's Answer to Interrog. No. 15 (Doc. No. 37-7). It is unclear whether Defendant Hooten is referencing the instant lawsuit or a tort claim that was filed against him at an unspecified date.

7

admission that he participated in campaign activities while "on the clock." *Id.*; *see* Malone Dep. 27:20-23.

The supposed link between Plaintiff's pay raise and Caudill's campaign is purely speculative and refuted by Plaintiff's evidence. *See* Caudill Aff. ¶ 12 ("Phillip Malone's raises were not related to campaign activities."). And, while Plaintiff may have been working on the campaign while he was supposed to be otherwise occupied, Defendant Hooten has not shown that Plaintiff's speech "stemmed from and was of the type that [Plaintiff] was paid to do," "reasonably contribute[d] to or facilitate[d] [Plaintiff's] performance of" official duties, or was "commissioned" by his employer. *Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018) (alterations, omission, and internal quotation marks omitted); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007). "[N]ot all speech that occurs at work is made pursuant to an employee's official duties." *Brammer-Hoelter*, 492 F.3d at 1204.

### 2. Whether the Protected Speech Was a Motivating Factor

As to this fourth element, a plaintiff must "establish a causal connection between his protected speech and an adverse employment action." *Underwood v. Bd. of Cty. Comm'rs of Cty. of Jefferson*, 611 F. Supp. 2d 1223, 1229 (W.D. Okla. 2009).

> To do so, the employee must show that his protected expression was a substantial or motivating factor in the adverse employment action. *Maestas*[*v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)]; *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005). Although the courts have not defined the phrase "substantial" or "motivating" factor for this purpose, the Tenth Circuit has explained the plaintiff's burden of showing a substantial motivating factor:

> What constitutes a substantial motivating factor evades precise definition. An employee "need not prove his speech was the sole reason for defendants' action." *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1554 (10th Cir. 1989). Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment.
>
> *Maestas*, 416 F.3d at 1188.

*Underwood*, 611 F. Supp. 2d at 1229.

Having carefully reviewed the record, the Court finds that Plaintiff Malone has met his burden to show a genuine fact issue for trial as to whether Plaintiff's termination was "substantially motivated by retaliation for" his support of Caudill's 2016 reelection campaign. *Id.* at 1232. As cited above, Plaintiff has presented evidence from which a jury could reasonably find that Defendant Hooten was aware of his campaigning for Caudill. And Plaintiff was terminated only 17 days after Defendant Hooten took office on January 3, 2017. Close temporal proximity coupled with an employer's knowledge of protected activity "may be sufficiently probative of causation to withstand summary judgment." *Maestas*, 416 F.3d at 1189. Although Defendant Hooten has disputed that he had knowledge of employees' campaign activities, the timing of this lack of knowledge is unclear, and regardless "issues of credibility" and contradictory accounts "cannot be decided in a motion for summary judgment." *Underwood*, 611 F. Supp. 2d at 1232 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000)); *see supra* note 4.

Plaintiff Malone has presented sufficient evidence to plausibly "link[] the employer's action to the employee's speech." *Maestas*, 416 F.3d at 1188. Plaintiff

9

therefore has shown a genuine issue for trial on the fourth *Garcetti/Pickering* element.[5] *See Maestas*, 416 F.3d at 1188-90; *Knopf*, 884 F.3d at 945.

### 3. Whether the Employer Would Have Reached the Same Employment Decision in the Absence of the Protected Conduct

At this fifth step in the analysis, the burden shifts to Defendant Hooten to show that he would have fired Plaintiff "even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). "Summary judgment is appropriate on [this] step when any reasonable jury would [find] that the plaintiff would have been terminated even absent any desire on [the defendants'] part to punish him in retaliation for his allegedly protected speech." *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) (alterations and internal quotation marks omitted).

The Court finds that Defendant Hooten has not produced sufficient undisputed evidence to establish as a matter of law that he would have terminated Plaintiff Malone even absent the alleged retaliatory motive. Defendant Hooten argues that Plaintiff was "terminated for cause," citing a memorandum written at Hooten's direction on January 10, 2017, outlining problems with a presentation Plaintiff had made earlier that day. Def. Hooten's Mot. at 4, 5; *see* Def. Hooten's Mot. Ex. 3 (Doc. No. 37-3); Wilkerson Dep. 25:18-26:13 (Doc. No. 51-26). But, Defendant Hooten does not cite any affidavit or other evidence in the record to show that he actually had that memorandum or Plaintiff's job

---

[5] Defendant Hooten is entitled to dismissal of Plaintiff's claim against him in his official capacity, however, as that claim is redundant of Plaintiff's claim against Defendant Board. *See* First Order of May 30, 2018, at 1 n.2; Second Order of May 30, 2018 (Doc. No. 22) at 7 n.7; *Dixon v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-15-196-R, 2015 WL 5839364, at *2 (W.D. Okla. Oct. 7, 2015).

performance in mind when he decided to fire him. *See* Def. Hooten's Mot. at 5-6, 16. "Factual statements contained in defendants' brief attributable to counsel . . . do not constitute summary judgment evidence." *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991).

Defendant Hooten also argues that terminating Plaintiff was part of his efforts to solve the "looming budget failure" that the Clerk's Office faced when Hooten took office in January 2017. Def. Hooten's Mot. at 17. While Defendant Hooten presents evidence supporting this assertion, *see* Enevoldsen Dep. 14:11-16 (Doc. No. 37-14) (testifying that Hooten met with another Clerk's Office official regarding projected deficits and staffing levels), such evidence is not sufficient to conclusively establish the fifth *Garcetti/Pickering* element. And Plaintiff has presented evidence that undermines the contention that he was fired merely due to budget concerns. *See, e.g.*, Pl.'s Resp. Ex. 4 (Doc. No. 51-4) (chart showing 16 employees hired after Defendant Hooten took office, with at least five of them making a higher salary than Plaintiff).

The Court finds that there is a genuine issue of material fact as to whether Plaintiff Malone would have been terminated absent any retaliatory motive for his political activities. *See Adler*, 144 F.3d at 670. Because Defendant Hooten's reason for terminating Plaintiff is the subject of disputed facts, summary judgment cannot properly be granted on this issue. *See Underwood*, 611 F. Supp. 2d at 1232; *Knopf*, 884 F.3d at 945.

### D. The Board's Motion

Defendant Board primarily argues that it is entitled to summary judgment on Plaintiff Malone's claim because Plaintiff "lack[s] standing" to bring suit against this

Defendant. Specifically, the Board argues that it does not exercise supervisory authority over Defendant Hooten as County Clerk, that Plaintiff is not complaining about any policies of the Board, and that Plaintiff cannot establish that his injuries "are fairly traceable to conduct of [the Board]," and thus the Board is not a "proper party" to this lawsuit. Def. Board's Mot. at 12-17, 19-20; Def. Board's Reply at 1-3.

The Board's standing argument conflates the justiciability of a plaintiff's lawsuit with the plaintiff's ultimate ability to prove a defendant's liability in that lawsuit. *Cf. Kauble v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-17-729-D, 2018 WL 912285, at *3 (W.D. Okla. Feb. 15, 2018) ("While couched in terms of subject matter jurisdiction, [the Oklahoma County Board of County Commissioners'] argument [that the plaintiff lacks Article III standing to sue], in reality, is premised on the notion that [the plaintiff] has failed to state a claim upon which relief can be granted because [the Oklahoma County Board of County Commissioners] has no authority to act in areas of detaining or releasing inmates."); *Thurman v. Cty. Comm'rs of Okla. Cty.*, No. CIV-17-950-M, 2018 WL 6237908, at *3 (W.D. Okla. Oct. 16, 2018) (R. & R.) (same), *adopted*, 2018 WL 6220213 (W.D. Okla. Nov. 28, 2018).

> This type of standing argument has been repeatedly rejected by this Court:
>
> Under Oklahoma law, a county's board of county commissioners is not a separate legal entity from the county. Rather, in general, it *exercises* the powers of the county. 19 Okla. Stat. § 3. A suit brought against a county's board of county commissioners is the way Oklahoma law contemplates suing the county. 19 Okla. Stat. § 4. Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county. *Porro*[, 624 F.3d at 1328]; *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999). . . . .

> The motion filed by the Board of County Commissioners confuses the issue by arguing that it (the Board) is not a "proper party," essentially because it didn't do anything wrong, or fail to do anything it had a duty to do. But, as noted above, the Board, as such, is not even a legal entity and obviously cannot be a "party" regardless of what it did or didn't do. Rather, the question is whether a basis for claim against the *county* is stated.

*Snow v. Bd. of Cty. Comm'rs of Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (citing *DuBois v. Bd. of Cty. Comm'rs of Mayes Cty.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332 (N.D. Okla. Sept. 29, 2014)). "Although it is true that in certain circumstances a board of county commissioners may be an improper party because its policies or customs cannot be shown to be responsible for an alleged constitutional violation, that does not mean that a board can *never* be a proper party as a matter of law." *Kauble*, 2018 WL 912285, at *4; *accord Chichakli v. Samuels*, No. CIV-15-687-D, 2016 WL 11447755, at *3 (W.D. Okla. Mar. 10, 2016) (R. & R.) ("Grady County can be held liable notwithstanding the fact that the Grady County Board of County Commissioners, itself, does not operate the jail or promulgate the policies attendant thereto."), *adopted*, 2016 WL 2743542 (W.D. Okla. May 11, 2016). "The United States Supreme Court has made it clear that any official or entity whose actions represent official policy may be liable under § 1983." *Vernon v. Slabosky*, No. CIV-11-815-HE, 2016 WL 4775739, at *14 (W.D. Okla. Sept. 14, 2016) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

As previously explained in this case, Plaintiff Malone's suit against the Board is actually a suit against Oklahoma County. *See* Second Order of May 30, 2018, at 7, 12-14; *see also Wright v. Stanley*, No. CIV-11-1235-C, 2015 WL 3606390, at *3 (W.D. Okla. June 8, 2015), *rev'd on other grounds sub nom. Wright v. Collison*, 651 F. App'x 745 (10th

Cir. 2016). In order to hold Oklahoma County—sued here through the Board—liable on Plaintiff's First Amendment claim, Plaintiff must show: "(1) the existence of a county policy or custom by which [Plaintiff] was denied a constitutional right, and (2) that the policy or custom was the moving force behind the constitutional deprivation[—]i.e. that there is a direct causal link between the policy or custom and the injury alleged." *Snow*, 2014 WL 7335319, at *2 (internal quotation marks omitted). It is undisputed that Defendant Hooten, in his capacity as a "county officer," has final decisionmaking authority in performing certain functions, including hiring and firing. Am. Compl. ¶ 38; Answer ¶ 1; Def. Board's Mot. at 19; *see* Okla. Stat. tit. 19, § 161(1). As such, his "edicts or acts may fairly be said to represent official policy" as implemented by an official with final decisionmaking authority for Oklahoma County. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see Snow*, 2014 WL 7335319, at *7. And a plaintiff may be able to demonstrate an official "policy or custom" for § 1983 purposes through reference to "a final decision" by a county policymaker. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *see also* Second Order of May 30, 2018, at 14.

As outlined above, Plaintiff Malone has shown a genuine factual dispute as to whether he "was denied a constitutional right." *Snow*, 2014 WL 7335319, at *2. Defendant Board therefore may be held liable for any such denial. *See id.*; *Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) ("[M]unicipalities are . . . liable for constitutional violations that they have directly caused."); *cf. Poore v. Glanz,* 724 F. App'x 635, 639 (10th Cir. 2018) (noting that an official-capacity claim can be proven "if the official's own

policies led to the deprivation of the plaintiff's constitutional rights"). The Board is therefore not entitled to summary judgment on Plaintiff's claim.

CONCLUSION

As outlined herein, Plaintiff Phillip Malone's official-capacity 42 U.S.C. § 1983 claim against Defendant David Hooten is dismissed without prejudice. Defendant Hooten's Motion for Summary Judgment (Doc. No. 37) and Defendant Board's Motion for Summary Judgment (Doc. No. 36) are otherwise DENIED as to Plaintiff Malone.

IT IS SO ORDERED this 1st day of May, 2019.

*[signature]*
CHARLES B. GOODWIN
United States District Judge